UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

JAMES DEWAR, an individual,

    Plaintiff,

v.                                    Case No. 5:23-cv-677-MMH-PRL

DIRECT INTERACTIONS, INC., a
foreign for profit corporation,

    Defendant.

_____

**O R D E R**

**THIS CAUSE** is before the Court on Plaintiff's Motion to Remand to State Court & Supporting Memorandum of Law (Doc. 13; Motion) filed on December 14, 2023. Defendant filed a response in opposition to the Motion. See generally Defendant's Opposition to Plaintiff's Motion to Remand to State Court (Doc. 15; Response), filed December 28, 2023. Defendant also filed the Declaration of Daniel T. Hagen in Support of Defendant's Opposition to Plaintiff's Motion to Remand to State Court (Doc. 16; Declaration). Upon review, the Court finds that the Motion is due to be denied.

**I.**     **Background**

In this action, Plaintiff asserts claims for breach of contract, promissory estoppel, and unjust enrichment. See Complaint (Doc. 1-5) ¶ 1. He alleges

that he wrote and filed a request for proposal ("RFP") on Defendant's behalf, which produced a successful bid worth "up to $7,000,000.00 per year for four years." Id. ¶¶ 11–13. In writing the RFP, Plaintiff asserts that he "reasonably assumed that he would be paid the same" 8% commission as "a similarly situated independent contractor" on any successful bid. Id. ¶ 9. But according to Plaintiff, Defendant "refused to pay Plaintiff a commission for" the revenue it derived from the RFP. Id. ¶ 14. Plaintiff contends that this "breached the oral agreement between the parties." Id. ¶ 18. In the alternative, Plaintiff asserts that he detrimentally relied on the promise of "an hourly rate and a commission for business referrals," and that Defendant has been unjustly enriched by failing to pay the promised commission. See id. ¶¶ 21, 29.

Plaintiff originally filed his Complaint in the Fifth Judicial Circuit Court in and for Marion County, Florida, on October 9, 2023. See Defendant's Notice of and Petition for Removal (Doc. 1; Notice), filed November 15, 2023. Defendant removed the action to this Court, asserting that the case "satisfies the requirements of diversity jurisdiction provided in 28 U.S.C. § 1332(a)" because "there is complete diversity among the parties and the amount in controversy exceeds $75,000.00." Id. at 2. In his Motion, Plaintiff contends that Defendant has failed to establish that the amount in controversy exceeds

the threshold necessary for the Court to exercise diversity jurisdiction. See generally Motion.

## II.   Legal Standard

"If a state-court complaint states a case that satisfies federal jurisdictional requirements, a defendant may remove the action to federal court pursuant to 28 U.S.C. § 1446(b)." See Roe v. Michelin N. Am., Inc., 613 F.3d 1058, 1060 (11th Cir. 2010). The removing party bears the burden of demonstrating that federal jurisdiction exists. Kirkland v. Midland Mtg. Co., 243 F.3d 1277, 1281 n.5 (11th Cir. 2001); see also Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 752 (11th Cir. 2010).[1] Where, as here, the defendant relies on diversity jurisdiction under § 1332(a) as the basis for removal, it must show both that the parties to the action are of diverse citizenship and that the amount in controversy exceeds $75,000.00. See Williams v. Best Buy Co., 269 F.3d 1316, 1319 (11th Cir. 2001). In this case, Plaintiff does not dispute that the parties are of diverse citizenship.[2] See Motion at 4. Therefore, the only

---

[1] Although Pretka involved removal under the Class Action Fairness Act of 2005 (CAFA), it interpreted and applied the general removal procedures; indeed, with limited exception, "CAFA's removal provision expressly adopts the procedures of the general removal statute, 28 U.S.C. § 1446." Pretka, 608 F.3d at 756–57 & n.11 (citations omitted). Thus, the Court finds Pretka's analysis applicable to the case at bar. See Bender v. Mazda Motor Corp., 657 F.3d 1200, 1204 n.2 (11th Cir. 2011); Roe, 613 F.3d at 1061–62.

[2] Based on its review of the record, the Court is independently satisfied that the parties are diverse. See Univ. of S. Ala. v. Am. Tobacco Co., 168 F.3d 405, 410 (11th Cir. 1999) (explaining that the Court is obligated to assure itself of subject matter jurisdiction even when the parties do not raise the issue). As detailed in the Notice, Plaintiff is domiciled in Florida and Defendant is a Washington corporation with its principal place of business in Seattle, Washington. See Notice at 3–6. Accordingly, Plaintiff and Defendant are citizens of Florida

jurisdictional question before the Court concerns whether the amount in controversy requirement has been satisfied. Williams, 269 F.3d at 1319.

"Where the plaintiff has not plead[ed] a specific amount of damages . . . the defendant is required to show . . . by a preponderance of the evidence that the amount in controversy can more likely than not be satisfied." Kirkland, 243 F.3d at 1281 n.5; see also Pretka, 608 F.3d at 752 (quoting Williams, 269 F.3d at 1319); Roe, 613 F.3d at 1061. "In some cases, this burden requires the removing defendant to provide additional evidence demonstrating that removal is proper." Roe, 613 F.3d at 1061. However, in other cases, "it may be 'facially apparent' from the pleading itself that the amount in controversy exceeds the jurisdictional minimum, even when 'the complaint does not claim a specific amount of damages.'" Id. (quoting Pretka, 608 F.3d at 754). In determining whether the amount in controversy requirement is met, the Court "focuses on how much is in controversy at the time of removal, not later." Pretka, 608 F.3d at 751 (citations omitted); see also Poore v. Am.-Amicable Life Ins. Co., 218 F.3d 1287, 1290–91 (11th Cir. 2000) (holding that "the district court must determine whether it had subject matter jurisdiction at the time of removal"), overruled on other grounds by Alvarez v. Uniroyal Tire Co., 508 F.3d 639, 640–41 (11th Cir. 2007); Sierminski v. Transouth Fin. Corp., 216 F.3d 945, 946 (11th Cir.

---

and Washington, respectively. See Travaglio v. Am. Exp. Co., 735 F.3d 1266, 1269 (11th Cir. 2013); 28 U.S.C. § 1332(c)(1).

2000).

A court may not speculate or guess as to the amount in controversy. See Pretka, 608 F.3d at 752. However, "Eleventh Circuit precedent permits district courts to make 'reasonable deductions, reasonable inferences, or other reasonable extrapolations' from the pleadings to determine whether it is facially apparent that a case is removable." Roe, 613 F.3d at 1061–62 (quoting Pretka, 608 F.3d at 754). Indeed, "courts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements." Id. at 1062. Moreover, "a removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." Pretka, 608 F.3d at 754. All that is required is that a removing defendant show, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional requirement. See id. at 752. However, in considering the propriety of a removal, federal courts consistently caution that removal statutes must be strictly construed, and all doubts resolved in favor of remand. See Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994); see also Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 109 (1941) ("Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined." (internal citations omitted)).

Nonetheless, when it is clear that the jurisdictional minimum is likely met, a district court should acknowledge the value of the claim, even if it is unspecified by the plaintiff.  See Roe, 613 F.3d at 1064.  To do otherwise would abdicate the court's statutory right to hear the case, and reward a plaintiff for "employing the kinds of manipulative devices against which the Supreme Court has admonished us to be vigilant."  See id.

### III. Discussion

In his Motion, Plaintiff asserts that Defendant has not shown that the amount in controversy exceeds the jurisdictional threshold because Plaintiff only "pled the jurisdictional minimum required to file this matter in state circuit court," and he "is not aware of what the actual value of his potential claims" is.  See Motion at 5.  In its Response, Defendant asserts that the amount in controversy exceeds $75,000 because the action is based on an alleged breach of an "agreement or promise to pay Plaintiff an 8% commission on a $7,000,000 contract," i.e., a commission worth $560,000.[3]  See Response at 8.  In the Declaration, Defendant also includes a demand letter in which

---

[3] It is somewhat unclear whether Plaintiff asserts that his oral contract specifically entitled him to an 8% commission.  See Complaint ¶ 9 (contending that Plaintiff "assumed" he would be paid an 8% commission).  However, the size of the potential contract coupled with Plaintiff's allegedly "reasonable" assumption of an 8% commission, see id., suggests that even if Plaintiff's commission rate was less than 8%, the value of the unpaid commission still would exceed the Court's jurisdictional threshold.  Accordingly, the allegations in the Complaint may well be sufficient to establish the amount in controversy even without Defendant's Declaration.

Plaintiff offered to settle the case for $350,000.  See Declaration at 4.[4]  In this letter, Plaintiff's counsel asserted that the parties agreed to "an 8% commission instead of the traditional 5%."  Id.  Noting that the successful RFP bid was worth "$7,000,000.00 per year for four years," he emphasized that "[i]n a litigation scenario, [Plaintiff] will seek the promised 8% [commission] for ***all*** years."  Id. (emphasis in original).

"When referencing a demand letter to ascertain the amount in controversy, courts analyze 'whether demand letters merely reflect puffing and posturing or whether they provide specific information to support the plaintiff's claim for damages.'"  See Boyd v. State Farm Mut. Auto. Ins. Co., No. 6:15-cv-1965-Orl-22TBJ, 2015 WL 12838805, at *2 (M.D. Fla. Dec. 16, 2015) (quoting Moser v. Cincinnati Ins. Co., No. 8:14-cv-3121-CEH-TWG, 2015 WL 628961, at *2 (M.D. Fla. Feb. 12, 2015)).[5]  If a pre-suit demand letter provides "a reasonable assessment of the value of the claim," then it is "more indicative of the true amount in controversy," especially where the letter "contains supporting information, such as medical bills or a specific medical diagnosis."  Id. (internal quotation omitted); see also Hernandez v. Burlington Coat Factory

---

[4] For ease of reference, the Court's citations to page numbers in documents in this record refer to the CM-ECF-stamped page numbers located at the top of each page, rather than a document's internal page numbers, if any.

[5] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority.  See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects").

of Fla., LLC, No. 2:15-cv-403-FtM-29CM, 2015 WL 5008863, at *2 (M.D. Fla. Aug. 20, 2015). In contrast, a demand for a lump sum amount "without the slightest suggestion how in the world the plaintiff[ ] could support such a figure," is considered nothing more than mere posturing. See Jackson v. Select Portfolio Servicing, Inc., 651 F. Supp. 2d 1279, 1281 (S.D. Ala. 2009).

Here, the Court is persuaded that the sum requested in Plaintiff's demand letter is more than mere puffing and posturing, and instead reflects a reasonable assessment of the value of Plaintiff's claim.[6] In offering to settle the case for $350,000, Plaintiff offered specific calculations in support of that figure, which represents "the standard commission" for an RFP multiplied by one year of Defendant's "realized value" from the successful bid (i.e., $7,000,000). See Declaration at 4. In the demand letter, Plaintiff further asserted that he is entitled to 8% of this realized value for all four years—not just one. See id. Taken together, this demand letter and the nature of the claim alleged in the Complaint are sufficient to show "by a preponderance of the evidence that the amount in controversy can more likely than not be satisfied."[7]

---

[6] In reaching this conclusion, the Court expresses no opinion on the merits of Plaintiff's claims or the amount of damages he might ultimately prove. Indeed, Plaintiff's "'likelihood of success on the merits is largely irrelevant to the [C]ourt's jurisdiction because the pertinent question is what is in controversy in the case, not how much [Plaintiff is] ultimately likely to recover.'" Pretka, 608 F.3d at 751 (quoting Amoche v. Guarantee Trust Life Ins. Co., 556 F.3d 41, 51 (1st Cir. 2009)); see also Motion at 4 (acknowledging this principle). For the same reason, it does not matter that Defendant "hedges its bet" by maintaining that Plaintiff is not entitled to recover the damages he has put in controversy. See Motion at 4 (citing Notice at 6 n.2).

[7] Because the demand letter and the allegations in the Complaint are sufficient to

See Kirkland, 243 F.3d at 1281 n.5. For this reason, Defendant has met its burden to demonstrate that subject matter jurisdiction exists, and the Motion is due to be denied.

Accordingly, it is

**ORDERED:**

1. Plaintiff's Motion to Remand to State Court & Supporting Memorandum of Law (Doc. 13) is **DENIED**.

2. Plaintiff is **DIRECTED** to respond to Defendant's Motion to Dismiss (Doc. 9) on or before **February 21, 2024**.

**DONE AND ORDERED** in Chambers on February 7, 2024.

/s/ Marcia Morales Howard
MARCIA MORALES HOWARD
United States District Judge

lc31

Copies to:

Counsel of Record

---

establish the amount in controversy, the Court does not address Defendant's argument that Plaintiff's attorney fees "may be included" in the total amount in controversy. See Response at 8–9.