## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

| | |
|---|---|
| **JAMES DEWAR, an individual,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **CASE NO. 5:23-cv-00677-MMH-PRL** |
| ) | |
| **DIRECT INTERACTIONS, INC., a** ) | |
| **Washington corporation,** ) | |
| ) | |
| **Defendant.** ) | |

## DEFENDANT DIRECT INTERACTIONS, INC.'s
## ANSWER, DEFENSES, AND COUNTERCLAIMS

Defendant, DIRECT INTERACTIONS, INC. ("Direct Interactions"), by and through its undersigned counsel, hereby files its Answer and Defenses to the Complaint filed by Plaintiff, JAMES DEWAR ("Dewar"), and states as follows:

### NATURE OF THE ACTION

1.      Because the Court denied Dewar's claim for breach of contract with prejudice (Dkt. 37), Direct Interactions denies that this action is for breach of contract. The remaining statements in this section do not require a response. To the extent that any of the remaining statements may be considered an allegation, the allegation is denied.

## JURISDICTION & VENUE

2.     Because the United States District Court in the Middle District of Florida denied Dewar's Motion to Remand (Dkt. 21), Direct Interactions denies that the Florida State Circuit Court has jurisdiction.

3.     Because the United States District Court in the Middle District of Florida denied Dewar's Motion to Remand (Dkt. 21), Direct Interactions denies that the Florida State Circuit Court is the proper and appropriate venue.

## PARTIES

4.     Direct Interactions lacks sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 4 of the Complaint and therefore denies the same.

5.     Direct Interactions admits Paragraph 5 of the Complaint.

## CONDITIONS PRECEDENT

6.     Paragraph 6 of the Complaint contains a legal conclusion that does not require an answer. To the extent any statement in Paragraph 6 of the Complaint may be construed as an allegation against Direct Interactions, it denies the allegation.

## STATEMENT OF ULTIMATE FACTS

7.     Direct Interactions admits that Dewar worked as an independent contractor for Direct Interactions, and that he briefly provided meditation and

wellness services. Direct Interactions denies all remaining allegations in Paragraph 7 of the Complaint.

8.    Direct Interactions admits that Dewar began assisting with responses to requests for proposal. Direct Interactions denies all remaining allegations in Paragraph 8 of the Complaint.

9.    Direct Interactions denies Paragraph 9 of the Complaint.

10.    Direct Interactions denies Paragraph 10 of the Complaint.

11.    Direct Interactions admits Dewar assisted Direct Interaction's other employees in responding to the Citizens Property Insurance Corporation request for proposal. Direct Interactions denies all remaining allegations in Paragraph 11 of the Complaint.

12.    Direct Interactions denies Paragraph 12 of the Complaint.

13.    Direct Interactions denies Paragraph 13 of the Complaint.

14.    Direct Interactions admits it did not pay any commission to Dewar. Direct Interactions denies the remaining allegations in Paragraph 14 of the Complaint.

## COUNT 1
## BREACH OF CONTRACT

Paragraphs 15-19 of the Complaint do not require a response because Count 1 of the Complaint was dismissed with prejudice. *See* Dkt. 35.

#5649950 v3 / 74280-002

## COUNT II
## PROMISSORY ESTOPPEL (QUANTUM MERUIT)
### (Alternative to Counts I and III)

20.    Direct Interactions reincorporates all prior admissions and denials as if fully set forth herein.

21.    Paragraph 21 of the Complaint contains legal conclusions that do not require an answer. To the extent that any statement may be construed as an allegation against Direct Interactions, it denies the same.

22.    Paragraph 22 of the Complaint contains legal conclusions that do not require an answer. To the extent that any statement may be construed as an allegation against Direct Interactions, it denies the same.

23.    Paragraph 23 of the Complaint contains legal conclusions that do not require an answer. To the extent that any statement may be construed as an allegation against Direct Interactions, it denies the same.

24.    Paragraph 24 of the Complaint contains legal conclusions that do not require an answer. To the extent that any statement may be construed as an allegation against Direct Interactions, it denies the same.

## COUNT III
## UNJUST ENRICHMENT
### (Alternative to Counts I and II)

25.    Direct Interactions reincorporates all prior admissions and denials as if fully set forth herein.

4

26.     Paragraph 26 of the Complaint contains legal conclusions that do not require an answer. To the extent that any statement may be construed as an allegation against Direct Interactions, it denies the same.

27.     Paragraph 27 of the Complaint contains legal conclusions that do not require an answer. To the extent that any statement may be construed as an allegation against Direct Interactions, it denies the same.

28.     Paragraph 28 of the Complaint contains legal conclusions that do not require an answer. To the extent that any statement may be construed as an allegation against Direct Interactions, it denies the same.

29.     Paragraph 29 of the Complaint contains legal conclusions that do not require an answer. To the extent that any statement may be construed as an allegation against Direct Interactions, it denies the same.

## DEMAND FOR JURY TRIAL

Direct Interactions admits that Dewar requests a jury trial on all issues so triable. Direct Interactions denies that Dewar can present any issues so triable.

## PRAYER FOR RELIEF

No response to the Prayer for Relief is required. To the extent that a response is required, Direct Interactions denies that Dewar is entitled to the relief he requests.

## GENERAL DENIAL

Each allegation in Dewar's Complaint not specifically and expressly admitted is hereby specifically and expressly denied.

## DEFENSES

Direct Interactions asserts the following defenses, without prejudice to its right to argue that Dewar bears the burden of proof regarding some or all of these defenses:

1. Dewar fails to state a claim upon which relief can be granted.

2. Dewar's claims are barred due to an express contract governing the parties' relationship.

3. Dewar's claims are barred by payment as Direct Interactions has already paid all compensation due to Dewar.

4. Dewar's claims are barred because no agreement existed between Dewar and Direct Interactions providing for any additional compensation to Dewar other than what Direct Interactions has already paid.

5. As to any agreements between Direct Interactions and Dewar, Direct Interactions fully performed all obligations arising from such agreements.

6. Dewar's claims for equitable relief are barred, in whole or in part, by the doctrine of unclean hands.

7. Any award of damages to Dewar is barred or reduced by amounts due to Direct Interactions as a result of Dewar's breach of Confidentiality Agreement and negligence.

## RESERVATION OF RIGHTS

Direct Interactions reserves the right to raise additional defenses as discovery progresses.

## COUNTERCLAIMS

1. In support of its counterclaims, Direct Interactions asserts the following factual allegations against Dewar.

2. Direct Interactions is a Seattle based company offering remote contact center solutions for US-based companies.

3. On or about August 4, 2020, Dewar began working as an independent contractor for Direct Interactions, specifically on a monthlong project for the Small Business Association.

4. When that program ended, Dewar transitioned to handling incoming calls for the American Red Cross. Dewar also worked as an independent contractor providing meditation and wellness sessions for Direct Interactions employees.

5. Dewar claimed to have skills suitable for a marketing role, as well as grant writing, and sought to work as an independent contractor for Direct Interactions' marketing team.

6. Based on Dewar's representations, Direct Interactions engaged Dewar as an independent contractor to provide assistance and oversight over Direct Interactions' marketing team, which ultimately became the Request for Proposal ("RFP") writers team in February of 2022.

7. Dewar's engagement was pursuant to an Independent Contractor Agreement (the "Agreement") between himself and Direct Interactions.

8. The Agreement was part of Dewar's onboarding process, and provided that Dewar would be paid $50.00 an hour for his work. Over the course of Dewar's engagement under the Agreement, he was paid this hourly rate for his work on RFPs.

9. The Agreement contains, as an attachment, a Confidentiality Agreement (the "Confidentiality Agreement"), to which Dewar was also bound.

10. The Confidentiality Agreement requires that Dewar not "reveal confidential information, or trade secrets to any person, firm, corporation, or entity."

11. In addition to granting Direct Interactions the right to seek an injunction for breach of the Confidentiality Agreement, it also provides that

8

"Direct Interactions may pursue any other remedies it has against [Dewar] for a breach or threatened breach of this condition, including the recovery of damages[.]"

12.    The Confidentiality Agreement further provides that "Confidential Information shall not otherwise be used by [Dewar] or disclosed to anyone else without the prior written consent of Direct Interactions."

13.    The definition of "Confidential Information" in the Confidentiality Agreement and General Terms and Conditions is broad, and includes "technical information, any other proprietary information and/or information concerning or relating to their respective operations, businesses, technical know-how and financial affairs, and any information not known to the general public, that is obtained by the other Party during the Parties' working relationship[.] Further, the definition includes "trade secrets, discoveries, ideas, concepts, know-how, techniques, designs, specifications, diagrams, customer lists, customer information, flow charts and any other technical, financial, business or proprietary information of any kind or nature whatsoever."

14.    The Agreement further provides that "upon termination, each party shall return all Confidential Information of the other party and [Dewar] shall fully cooperate with Direct Interactions to facilitate the prompt transfer of all applicable equipment, information, data and/or other records."

15.    In addition to the Confidentiality Agreement, Direct Interactions communications were all clearly labeled with a "Confidentiality Notice" stating that "[u]nless otherwise expressed in writing, the content of this email message and any attachments are intended solely for the addressee(s) and are designated confidential, privileged, and/or proprietary and are legal protected from disclosure."

16.    Dewar was, and remains, fully aware of his obligations under the Agreement and Confidentiality Agreement to keep company communications and business documents confidential.

17.    In mid-2022, the State of Montana solicited RFPs for Medicaid Eligibility Staff Augmentation (the "Montana RFP"). The Montana RFP sought to obtain contracts from providers who could provide call center employees to handle Medicaid eligibility correspondence.

18.    The contract awarded under the Montana RFP was worth, over the life of the contract, approximately $11,947,200.

19.    Dewar represented to Direct Interactions he was qualified to handle the Montana RFP proposal and was ultimately tasked with working with Direct Interactions' marketing team to develop and finalize the RFP proposal.

#5649950 v3 / 74280-002

20.    Direct Interactions consulted with Dewar regarding the Montana RFP and RFP proposal, and gave extensive feedback to Dewar regarding the proposal.

21.    Dewar submitted a proposal in May of 2022, on behalf of Direct Interactions, to the State of Montana in response to the Montana RFP.

22.    The submission was a disaster. The document submitted by Dewar was an incomplete draft. The proposal was missing key sections, and worst of all, contained "notes" in the margin left by reviewers specifically indicating portions of the document that were incomplete or insufficient.

23.    Dewar did not correct the errors by withdrawing or resubmitting a completed draft. Direct Interactions only learned about the disastrous proposal after it received an evaluation from the State of Montana, detailing the deficiencies in the proposal (the "Evaluation").

24.    The Evaluation specifically identified that Direct Interactions' submission "looked like a draft that wasn't finished."

25.    In addition, the Evaluation stated, "comments from individuals who were doing a review were left in document; comments weren't addressed."

26.    The Evaluation also pointed out numerous other deficiencies in the proposal, which should have been addressed by Dewar. For example, that Direct

Interactions had provided a "poor" response regarding its "onboarding schedule."

27.    The Evaluation is a public document, viewable by anyone with an interest in the Montana RFP process. Direct Interactions was informed by multiple sources that the Evaluation was a "black eye" for the company.

28.    Dewar's tenure as an independent contractor for Direct Interactions was marred by incompetence and complaints. Many Direct Interactions employees found him impossible to work with, describing his behavior as arrogant and erratic.

29.    Dewar also failed to make any meaningful contribution to Direct Interactions. The Citizens contract referenced in Dewar's Complaint, as an example, was not a "win" attributable to his efforts, but rather, was a consequence of other factors working in Direct Interactions' favor. Specifically, that Direct Interactions was the sole vendor handling calls for the Red Cross Disaster Cycle Services department at the time, and Direct Interactions had specific experience handling disaster-related calls. Dewar also made several errors and omissions with respect to the Citizens RFP, including by again submitting an unfinished version of the proposal as if it was final.

30.     Based on Dewar's erratic behavior, inability to work with others, and multiple failures, the Agreement was ultimately terminated by Direct Interactions in January of 2023.

31.     Following his termination, Dewar began posting confidential Direct Interactions documents on his LinkedIn.com page. The documents posted, which are viewable by the general public, clearly indicate they are confidential and proprietary and include confidential pricing information.

32.     In addition to posting Direct Interactions' confidential documents and information, Dewar has posted false information regarding his work at Direct Interactions, including that he "worked in AWS environment for last couple of years." Dewar did no work whatsoever in the Direct Interactions AWS environment. In addition, Dewar's claim that his "work resulted in a $28M Contract win with Citizens Insurance of Florida" is similarly false.

## COUNT I
## BREACH OF CONTRACT

33.     Direct Interactions incorporates the above as if fully set forth here.

34.     Direct Interactions and Dewar were parties to a valid, binding, and enforceable contract – the Agreement.

35.     The Agreement included Confidentiality provisions prohibiting use and disclosure of confidential Direct Interactions documents and information.

#5649950 v3 / 74280-002

36.      Dewar knowingly breached the Confidentiality provisions of the Agreement, by posting confidential Direction Interactions documents on a public website (linkedin.com).

37.      Dewar posted these documents for his own personal benefit, and without regard for his contractual duty of non-disclosure.

38.      Dewar also violated the Agreement by failing to return or destroy confidential Direct Interactions documents as required under the Agreement.

39.      Direct Interactions is entitled to damages in an amount to be determined at trial, including pre and post-judgment interest, and attorneys' fees and costs as provided for under the Agreement.

## COUNT II
## NEGLIGENCE

40.      Direct Interactions incorporates the above as if fully set forth here.

41.      As an independent contractor, Dewar had a duty of care to perform his obligations under the Agreement with reasonable care.

42.      Dewar breached that duty by submitting grossly deficient and error-ridden proposals in response to RFP's, including without limitation, to the State of Montana.

43.      Dewar's errors and omissions directly caused Direct Interactions' proposals to fail, resulting in damages amounting to at least $2,225,630.05.

44.     In addition, Dewar's errors and omissions directly led to significant reputational harm to Direct Interactions.

45.     The damages from Dewar's negligent performance shall be in an amount to be determined at trial.

## PRAYER FOR RELIEF

1.     As to Count I, an award of damages resulting from Dewar's breaches of the Agreement, plus attorneys' fees and costs, in an amount to be determined at trial.

2.     As to Count II, an award of damages in the amount of $2,225,630.05 for Dewar's negligence with respect to the Montana RFP, and such additional amount of damages in an amount to be proven at trial.

3.     For an award of attorneys' fees costs as provided in the Agreement, and as may be otherwise allowed by contract, statute, equity, or procedural rule.

4.     For pre and post judgment interest on all amounts awarded; and

5.     For such other relief as deemed equitable and just by the Court.

15

DATED this 15th day of August, 2024

Respectfully submitted,

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, WA 98104
Telephone:  (206) 223-1313
Facsimile:    (206) 682-7100

By:    */s/ Daniel T. Hagen*
       Daniel T. Hagen
       Washington Bar No. 54015
       dhagen@karrtuttle.com

JACKSON LEWIS P.C.
390 North Orange Avenue, Suite 1285
Orlando, Florida 32801
Telephone:  (407) 246-8440
Facsimile:    (407) 246-8441

By:    */s/ Justin W. McConnell*
       Justin W. McConnell
       Florida Bar No. 112631
       justin.mcconnell@jacksonlewis.com

Attorneys for Defendant

16

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of August, 2024 I caused the foregoing document to be served on the parties listed below in the manner indicated.

Eric R. Sloan,
The Sloan Firm PLLC,
57 W. Granada Boulevard,
Ormond Beach, FL 32174
eric.sloan@thesloanfirm.com
natasha@thesloanfirm.com
*Attorneys for Plaintiff*

☐ Via U.S. Mail
☐ Via Hand Delivery
☒ Via Electronic Mail
☐ Via Overnight Mail
☐ CM/ECF via court's website

*/s/ Annaliese K. Sier*
Annaliese K. Sier

17

#5649950 v3 / 74280-002